United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re: | Bankruptcy No. 14-bk-10105 |
| Robert J. Meier, | Chapter 11 |
| Debtor. | |

## MEMORANDUM OPINION ON EDWARD SHROCK'S MOTION TO DISMISS OR ABSTAIN & FOR SANCTIONS

Robert Meier ("Meier") is the CEO and owns a ⅞ interest in Baby Supermall, LLC (the "Company"). Edward Shrock ("Shrock") was a founder of the Company, and continues to own a ⅛ interest. The Company sells infant bedding, clothing and other accessories online. The parties have been embroiled in state court litigation in the Circuit Court of Cook County, in a case styled *Shrock v. Meier*, 09 L 1455. Shrock sought a judgment against Meier for breach of his fiduciary duty, and the dissolution of the Company. On March 5, 2014, a jury returned a verdict against Meier finding that Meier violated his fiduciary duties to Shrock. Before judgment was entered on the verdict, Meier filed a petition for relief under Chapter 11 in this court. Shrock then moved herein for relief from the automatic stay in order to continue the litigation in state court. That motion was granted, and the state court litigation continues apace. Here, Shrock has moved for dismissal of the bankruptcy case, or for abstention from the case, and for sanctions because the bankruptcy case was assertedly filed in bad faith as a litigation tactic. That has not been shown, so Shrock's motion will be denied.

## DISCUSSION

### JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334. That authority may be delegated to the bankruptcy court under 28 U.S.C. §§ 157(b)(2), and has been delegated by our District Court through Internal Operating Procedure 15(a). A motion to dismiss under § 1112 is a core proceeding. 28 U.S.C. § 157(b)(2)(A). It "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### DISMISSAL

**Meier's bankruptcy has a valid reorganizational purpose**

Shrock argues that dismissal of the bankruptcy case is appropriate because Meier filed the case in bad faith as a litigation tactic. Meier's bankruptcy filing came after a jury rendered a verdict

$10 million verdict for punitive damages in Shrock's favor, but before the judge had determined compensatory damages or entered a final judgment. (Motion, Dkt. 97 at ¶ 26.) Shrock also argues that the filing was in bad faith because Meier is engaged in forum shopping by filing an adversary proceeding in bankruptcy court for dissolution of the Company, even as Meier opposed dissolution in state court. (Motion ¶ 27.) Shrock also argues that Meier is engaged in a scheme to sell the Company at a sweetheart price to his family. (Motion ¶ 28.)

Meier argues that he filed the case for a proper reorganizational purpose: a fair distribution of assets to his creditors. He argues that a fair distribution to creditors would have been impossible if Shrock had been able to obtain a judgment in state court because Shrock would have been able to serve a citation to discover assets, and would therefore have created a security interest in all of Meier's property. (Response, Dkt. 128 at ¶ 13.)

"It is generally recognized that "good faith" is a threshold prerequisite to securing Chapter 11 relief, and that the lack of such good faith constitutes 'cause,' sufficient for dismissal under 11 U.S.C. § 1112(b)." *Matter of Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984) (citations omitted). "The key test of good faith in Chapter 11 is whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization… In other words, the question is whether the case and possible plan serve a valid reorganizational purpose." *In Matter of Strug-Div., LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007) (citing *In re SGL Carbon*, 200 F.3d 154 (3d Cir. 1999). "Broad discretion is left to bankruptcy judges to find bad faith or not." *In re Am. Consol. Transp. Companies, Inc.*, 470 B.R. 478, 493 (Bankr. N.D. Ill. 2012). A list of non-exclusive factors has been developed to inform consideration of a bad faith allegation, and they include whether:

1. the debtor has any assets;
2. the debtor has recently transferred assets;
3. the debtor has any employees;
4. the debtor has any cash flow to sustain reorganization;
5. the debtor has any chance of confirming a reorganization plan;
6. the debtor and one of its creditors have reached a standstill in state court litigation;
7. the debtor is trying to delay its creditors or reduce their rights;
8. there are allegations of wrongdoing by the debtor or its principals; or
9. bankruptcy offers the only possibility of preventing the loss of property.

*In re S. Beach Sec., Inc.*, 341 B.R. 853, 856-57 (N.D. Ill. 2006) (reformatted as a list for clarity).

A Seventh Circuit opinion has been critical of multifactor tests, especially as the list of factors to be considered grows longer. "Multifactor tests with no weight assigned to any factor are

2

bad enough from the standpoint of providing an objective basis for a judicial decision; multifactor tests when none of the factors is concrete are worse." *Marrs v. Motorola, Inc.*, 577 F.3d 783, 788 (7th Cir. 2009). Accordingly, the focus should be on the "key test" of good faith, that is: whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization or whether the case and possible plan can otherwise serve a valid reorganizational purpose.

One of the fundamental purposes of Bankruptcy Code is to avoid piecemeal dismemberment of the debtor. *See NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884 (6th Cir. 1989). One way the Code accomplishes this is with the automatic stay, which "protects creditors by ending the race to the courthouse and the piecemeal liquidation of the debtor's estate in favor of the fair and equal treatment of creditors." *In re Jackson*, 173 B.R. 637, 640 (Bankr. N.D. Ill. 1994). "Assuming it is properly structured, this collective proceeding maximizes the return to the creditors as a group. The race to the assets of state law is replaced by reasoned decisionmaking." *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918 (N.D. Cal 1994) (citing Robert Kenneth Rasmussen, *Bankruptcy and the Administrative State*, 42 Hastings L.J. 1567, 1574-75 (1991)).

The time ordered for debtor to file a plan will not expire until October 31st, and so the feasibility of debtor's Plan will not be considered until after that date. (Dkt 111.) Meier may have a valid reorganizational purpose because he has far more liabilities than assets. The IRS has filed a proof of claim for $255,003.73 (Claim No. 1-1), Union National Bank for $641,221.42 (Claim No. 2-1), Ungaretti & Harris LLP for $258,885.06 (Claim No. 5-1), Martha Meier for $2,733,333.00 (Claim No. 6-2), and the Company for an unknown amount (Claim No. 7-1), all in addition to Shrock's claim. Shrock himself argues that Meier has limited resources to repay creditors. (Reply at 4.) Shrock claims that his claim is entitled to a constructive trust, and is in any case nondischargeable. Debtor's former spouse, Martha Meier, claims a priority as a marital support obligation, again nondischargeable. The IRS also claims priority. Reasoned decision making should be favored over piecemeal dismemberment as creditors engage in a race to collect assets.

A Third Circuit case, *In re SGL Carbon* is instructive. 200 F.3d 154 (3d Cir. 1999). In *SGL Carbon*, a solvent supplier of graphite electrodes filed a voluntary petition for Chapter 11 relief when faced with antitrust lawsuits from its customers. 200 F.3d at 156-57. Even with the antitrust liability pending, the officers of SGL Carbon insisted that the company was financially healthy. *Id.* at 162. Further, there was no evidence that any civil antitrust judgments would force SGL Carbon out of business. *Id.* at 163. Even though the Bankruptcy Code encourages early filing, the Court of Appeals determined that SGL Carbon's filing was premature because any financial difficulties were

just "an attenuated possibility." Id. at 164. SGL Carbon's proposed plan also counseled in favor of a finding of bad faith, since it proposed to pay antitrust claimants in scrip, while all other creditors were to be paid in full in cash. Id. at 167.

Here, Meier filed for bankruptcy before judgment but after a large jury verdict had been entered against him. "Courts have allowed companies to seek the protections of bankruptcy when faced with pending litigation that posed a serious threat to the companies' long term viability." Id. at 164. If Shrock were the only major creditor, that might suggest bad faith by Meier, but that is not the case here.

Nor has Meier filed "too early" as in SGL Carbon. Shrock argues in his reply that filing to stop Shrock from becoming a secured creditor, as Meier claimed to do, is itself bad faith. Not so, because the Bankruptcy Code contains several provisions that would allow a trustee (including Meier as debtor in possession) to undo a citation lien even after one attaches. Section 547 allows the avoidance of a "transfer," of interest including a newly attached citation lien, within 90 days of filing. See In re T.M. Sweeney & Sons, LTL Services, Inc., 120 B.R. 101, 104 (Bankr. N.D. Ill. 1990). A trustee might also be able to avoid a citation lien using the strongarm power provided in § 544(a)(1). See Id. at 106. Filing to forestall a citation lien can be a legitimate use of the Bankruptcy Code because it replaces the race to the courthouse with a collective proceeding.

At the very least, Meier can be justified in filing some sort of bankruptcy case, whether a liquidation under Chapter 7 or a reorganization under Chapter 11. That much is clear because his liabilities outstrip his assets and (as Shrock argues) also outstrip his earnings potential. Thus, the question of a valid reorganizational purpose becomes whether Meier can likely pay more to creditors under his Chapter 11 case than under Chapter 7. At the very least, § 1115 provides that the "the estate includes, in addition to the property specified in section 541—" any newly acquired property, and any earnings of the debtor, and § 1129(a)(15) provides that if a claim is not paid in full and the claimant objects, the debtor must pay "not less than the projected disposable income of the debtor as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan..." Thus, the valid reorganizational purpose may be served because a creditor can seek to be paid out of the debtor's projected future income under the plan.

Moreover, the varying priorities of the claimants is a reason to keep the case in bankruptcy. Shrock argues that Martha Meier should not be paid ahead of him as a priority claimant. (Motion ¶ 32.) Shrock's insistence that he be paid ahead of other creditors is not a reason to dismiss the bankruptcy case. Perhaps Shrock should be paid ahead of other creditors because (as Shrock

4

asserts) Meier unjustly enriched himself at Shrock's expense so that Shrock is entitled to a constructive trust. See In re Mississippi Valley Livestock, 745 F.3d 299, 304 (7th Cir. 2014). Perhaps Martha Meier is not entitled to a priority after all. But it does not follow from those possibilities that Shrock should be able to collect in state court ahead of other creditors by winning a race to the courthouse. Those issues should be decided on the merits, in an orderly fashion. A bankruptcy case will allow precisely that. Shrock has been granted relief from the automatic stay to pursue final judgment for restitution in state court. (Dkt. 113 ¶ 1.A.ii.) A trial was held here on October 14, 2012 to determine Shrock's objection to Martha's priority claim. Objections to claims by other parties remain pending. In bankruptcy, each will be resolved on the merits, with dismissal, by a race to the courthouse. Therefore, dismissal would be improper.

### Shrock's other arguments for bad faith also fail

Shrock argues that Meier is using the bankruptcy case as a means for improper forum shopping for the dissolution of the Company. That may be so, but any attempt at forum shopping has already been defeated, because Shrock's motions for relief from stay to continue proceedings in state court was granted, (Dkt. 113.) as was his motion to dismiss Meier's adversary proceeding to wind up the Company in bankruptcy court. (14-ap-237, Dkt. 40.) Even though Meier's attempt at forum shopping (which may have been an improper purpose) was defeated, Meier has continued to use the bankruptcy proceedings to pursue other ends which, as discussed above, are legitimate.

Shrock's also argues that Meier is using his bankruptcy as a scheme to sell the Company to his family at a sweetheart price, but does not explain how a bankruptcy filing would help him to do so. Whether in bankruptcy court (if the adversary proceeding for dissolution had not been dismissed), or in state court, a dissolution would occur under judicial supervision. See Meier v. Baby Supermall LLC, 14-ap-237 Dkt. 38 at *2-3 (discussing dissolution of an Illinois LLC). Shrock argues that Meier attempted to sell the Company to himself in 2009, thus excluding Shrock at the outset of the state court litigation, but was enjoined by the state court. (Motion ¶ (vi).) Shrock also argues that the filing is a tactic to funnel money to his ex-wife Martha Meier by using bankruptcy priorities. (Motion ¶ 32.) The bankruptcy case was filed five years later after a jury verdict (but not a judgment) was entered in the state court litigation. While Meier may wish to enrich himself and his family in the bankruptcy as well as outside bankruptcy (or to limit his future nondischargeable debts), that does not amount to a bad faith filing because the key question is whether there is a valid reorganizational purpose. Rather, if Meier is unable to perform on his fiduciary duties to all creditors, the proper remedy might be the appointment of a trustee.

Nor does it appear, as Shrock argues, that Meier is attempting to sell the Company's assets as his own assets in the bankruptcy proceeding. No motion to sell has been made under § 363. Rather, Meier respected the separation of himself from the Company by filing an adversary seeking dissolution. Now that the dissolution proceeding is before the state court, he still has not attempted to dispose of the Company's assets in his personal bankruptcy case.

Meier's bankruptcy filing is not shown to have been in bad faith because he appears to have a proper reorganizational purpose: creditors have the prospect of a recovery in a collective proceeding in bankruptcy instead of from a race to the courthouse outside bankruptcy. None of Shrock's arguments about Meier's supposed bad acts overcomes the likelihood of that proper purpose. Therefore, Meier's bankruptcy case will not be dismissed for bad faith.

### ABSTENTION

Together with dismissal, Shrock asks for abstention. Abstention under 28 U.S.C. § 1334 applies to adversary proceedings, not cases. With exceptions not relevant here, "the district court shall have *original* and *exclusive* jurisdiction of all cases under title 11." 28 U.S.C. § 1334 (emphasis supplied). There is no other forum where a bankruptcy case can be heard except a federal court. The term, "all cases under title 11," refers to the main bankruptcy case, not adversary proceedings. *In re Halas*, 226 B.R. 618, 621 (Bankr. N.D. Ill. 1998). Abstention under § 1334(c) applies to "proceedings," not "cases." Section 305 of the Bankruptcy Code also provides for abstention, allowing dismissal or suspension of a case if "the interest of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). As discussed above, the interests of creditors would be better served by a bankruptcy case rather than a dismissal.

### SANCTIONS

Shrock also moves for sanctions under Rule 9011. As set forth above, there was no bad faith on Meier's part in filing this bankruptcy case. Nor does Shrock point to any other demonstrated conduct that is sanctionable under Rule 9011. Therefore, no sanctions will be imposed.

## CONCLUSION

For the foregoing reasons, Shrock's motion for dismissal, abstention, and sanctions will be denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 21st day of October, 2014.