**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re:* | ) | Case No.  14 B 10105 |
| | ) | Chapter 11 |
| **ROBERT J. MEIER,** | ) | Hon. Jack B. Schmetterer |
| **Debtor** | ) | |

**CREDITOR EDWARD SHROCK'S FINAL
FINDINGS OF FACT & CONCLUSIONS OF LAW**

Creditor Edward Shrock, by and through his attorney, John Xydakis, submits the following final proposed findings of fact and conclusions of law for the October 14, 2014 trial on his objection to Martha Meier's ("Martha") Claim 6 for $2,733,333:

**I. FINDINGS OF FACT.**

**A. Martha Submits Two Proofs of Claims.**

1.   The Court has jurisdiction over the parties and subject matter of this contested matter under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B).

2.   Martha Meier ("Martha," n/k/a Martha Maggiore) claims Debtor Robert J. Meier ("Meier") owes her $2,733,333 (or $2,333,333) as a domestic support obligation (also "DSO") that is entitled to a priority under any Chapter 11 plan.

3.   On June 30, 2014, Martha Meier filed a Proof of Claim in the above-captioned case (Claim 6) claiming Meier owes her $2,733,333 as a priority domestic support obligation. This Proof of Claim did not have any supporting documents.

4.   On September 12, 2014, after Shrock objected to the claim, Martha filed an Amended Proof of Claim stating only $2,333,333 was entitled to a priority, the other $400,000 a property settlement.  Martha also filed a supporting document, a supplement (Claim 6, part 2), to

her Amended Proof of Claim. It states (¶¶3,4) that as of the petition date, Meier owed a balance of $2,333,222 in monthly payments that are entitled to priority under Section 507(a)(1)(A) of the Bankruptcy Code.

5.    The supplement also contains a Judgment for Dissolution (Exhibit A) between Martha and Meier that states it was entered on January 15, 2010. It also contains (Exhibit B) a January 15, 2010 Marital Settlement Agreement signed by Martha and Meier.

6.    This Marital Settlement Agreement (Exhibit B) states that Martha was entitled to receive from Meier:

   i.   $1.2 million (p.9) within 90 days from the entry of Judgment for Dissolution (ie., no later than April 15, 2010);

   ii.  $400,000 by February 2021 (p.7); and

   iii. $4,000,000 in $33,333 monthly payments over 120 months (over ten years), starting February 1, 2010 (p.4).

**B. Martha Offers No Explanation Why Claims Differed.**

7.    On October 14, 2014, a trial was held. Only Martha Meier testified.

8.    At trial, Martha admitted that when Meier filed his Bankruptcy Petition on March 20, 2014, he was current on any obligations pursuant to the Martial Settlement Agreement (Exhibit B). Martha admitted she received $1.2 million in 2010. In addition, Martha admitted she received monthly payments of $33,333 from February 1, 2010 through and including March 2014, a total of $1,666,667 (50 months at $33,333). Hence, Martha has received $2,866,667. Meier's schedules (Document 23, p.10) also confirm that Martha was paid $33,333 on January 3, February 5, and March 5 2014.

2

9. At trial, Martha further testified that she met with her two bankruptcy attorneys, John Hiltz and Blair Zanzig to go over her Amended Proof of Claim before filing it. Another of Martha's attorneys, Jean Conde, is listed on the Claims. Martha testified that when was given an opportunity to question her attorneys about the Amended Proof of Claim. At trial, Martha never offered any explanation why the two Claims differed. Neither did Martha's bankruptcy attorneys or her divorce attorney.

## II. CONCLUSIONS OF LAW

### A. Martha is Judicially Estopped from Contesting Claim.

10. "In bankruptcy cases, the schedules filed by debtors and the proofs of claims filed by creditors are judicial admissions." *In re Perry*, 394 B.R. 852, 857 (Bankr.S.D.Tex 2008); *In re Jordan*, 403 B.R. 339, 351-52 (Bankr. W.D.Penn. 2009)(same). "Judicial admissions are "binding upon the party making them" and "cannot be controverted." *Keller v. U.S.*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). "[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Soo Line v. St. Louis*, 125 F.3d 481, 483 (7th Cir. 1997).

11. In her initial Proof of Claim, Martha checked Box 5 and claimed all of the $2,733,000 ($2.3 million in monthly payments plus the $400,000 payment in 2021) that Meier owed her was a domestic support obligation within the meaning of Bankruptcy Code Section 507(a)(1)(A). Martha also checked Box 8, stating she was the creditor, and signed the Proof of Claim herself under the line stating, "I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief." Martha failed to attach any supporting documents to this Proof of Claim even though they were available.

3

12. At trial, Martha never offered any excuse as to her or her attorneys' apparent mistakes or failings in the first Proof of Claim. Likewise, several weeks ago, in *Sheikh v. Grant Reg. Health Ctr.*, *6-7, No. 14-1449 (7th Cir. Oct. 14, 2014), the Court said:

> "The *coup de grace* is that the plaintiff has never offered an excuse for what he contends was his second lawyer's incomplete response to the hospital's motion for summary judgment." "The plaintiff argues that it was not his fault that his lawyer screwed up. But in civil litigation, the lawyer's errors are attributed to the client; the client only remedy is an action for malpractice. Were the principal not responsible for his agent's efforts, litigation would be even more chaotic than it is."

13. If the Seventh Circuit found one lawyer's mistake attributable to the client, here, the Court can find three lawyers' actions attributable to Martha: Martha is judicially estopped from claiming any part of the $2,733,333 is not a domestic support obligation. *In re Allegheny Health*, 321 B.R. 776, 799-800 (Bankr.W.D.Pa. 2005)(proof of claims are judicial admissions).[1]

### B. Martha is Not Entitled to A Priority.

14. "A domestic support obligation can become payable 'before, on, or after' the filing of the petition.' 11 U.S.C. 101(14A) 2013. As a result, some obligations are to prepetition while others become due postpetition. The Code treats each differently." *In re Young*, 497 B.R. 904, 916 (Bankr. W.D.Ark. 2013).

15. Under 11 USC §507(a)(1), only "[a]llowed unsecured claims for domestic support obligations that, *as of the date of the filing of the petition in a case under this title*, are owed to or recoverable by a . . . .former spouse" are entitled to priority.

16. As of the date Meier filed his Chapter 11 petition, he was current on any support obligations to Martha. By definition then, under §507(a)(1), Martha has no right to a priority.

---

[1] Shrock has reserved his right to contest Martha's claim the money is for domestic support (i.e. alimony or maintenance), as opposed to a property settlement. The Court makes no findings regarding this matter, but only that Martha has judicially admitted the amount is for a domestic support obligation only for the purpose of Shrock's objections to Martha's Proof of Claim.

4

### C. Martha is Not Entitled to A Claim.

17.  "While both prepetition and postpetition domestic support obligation meet the Code's definition of a 'claim,' 11 U.S.C. § 502(b)(5) disallows any claim 'to the extent that 'such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) [domestic support obligations] of this title.''" *In re McKinney*, 507 B.R. 534, 541 (Bankr. W.D.Penn. 2014).

18.  "In other words, only the prepetition portion of a domestic support obligation can be an allowed claim under Section 502(b)(5). Postpetition domestic support obligations fall into the category of 'unmatured' claims, because they are not due at the time the debtor files for bankruptcy." *Id.*

19.  "Because postpetition domestic support obligations are not part of the debt owed as of the date of the petition, [and] such debts qualify as unmatured" "a creditor cannot [even] file a proof of claim for postpetition domestic support obligations." *In re Young* at 917.(citations omitted). "In fact, the Code [itself] does not even permit the filing of a proof of claim for postpetition domestic support obligations.*" Id.*

20.  Hence, "[o]nly a pre-petition support obligation can be a claim against the estate." *In re Werth*, 468 B.R. 412, 413 (Bankr. Kan. 2012). While the Bankruptcy Code provides special treatment for domestic support obligations[][,], such treatment does not include earmarking pre-petition assets for post-petition obligations." *Id.* "Post-petition support obligations are to be paid out of debtor's post-petition income, not from estate property." *Id.*[2] Hence, because Martha is not even entitled to file a Proof of Claim, her Claim is disallowed.

---

[2] See also 4 Collier on Bankruptcy, ¶502.03[6][a] (Matthew Bender 2005)(only "matured [DSO] payments unpaid at the time of the filing of the petition. . . would [] be allowed to share in a distribution of the debtor's assets. Indeed, such a claim would be entitled to priority . . .").

5

Dated: October 29, 2014

        Respectfully Submitted,
        Edward Shrock

       By:   /s/ John Xydakis
       One of His Attorneys

John Xydakis (ARDC No. 6258004)
LAW OFFICE OF JOHN S. XYDAKIS
30 N. Michigan Ave., Suite 402
Chicago, IL 60602
(312) 488-3497
johnxlaw@gmail.com

**CERTIFICATE OF SERVICE**

 I, John Xydakis, hereby certify that a true and correct copy of this document was served on this 29th day of October 2014 upon the persons entitled to receive notice by electronic mail through the Court's ECF electronic delivery system.

           By:  /s/ John Xydakis

---

See also *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986)("[O]nly matured obligations for support, maintenance, and alimony are allowable against the assets of the bankruptcy estate. Post-petition obligations for support are collectible directly from the debtor out of the property set aside to him as exempt or acquired by him after the petition is filed. Section 523(a)(5) of the Bankruptcy Code renders obligations for alimony, maintenance, or support nondischargeable. In turn, Section 502(b)(5) disallows claims against the bankruptcy estate for alimony, support and maintenance that are not matured on the date the petition for relief under the bankruptcy laws is filed. Thus, unmatured claims for alimony, support and maintenance that are non-dischargeable are not allowable against the assets of the bankruptcy estate.").

See also *In re Burnett*, 646 F.3d 575, 582 (8th Cir. 2011)(These are "post-petition domestic support obligations, for which the Bankruptcy Code allows no proof of claim. See 11 U.S.C. §502(b)(5) (disallowing any claim "" to the extent that . . . . such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523()(a)(5),' e.g., a domestic support obligation). The BAP recognized this as well, writing that[t]o the extent Debtor had a continuing post-petition obligation to pay spousal support, the confirmed plan could not, and did not, affect that obligation.").