UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.: 14-B-10105 |
| ROBERT J. MEIER, ) | Ch. 11 |
| ) | |
| Debtor. ) | Hon. Jack B. Schmetterer |
| ) | |
| ) | |

# CREDITOR MARTHA MEIER'S FINAL PROPOSED
# FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the Court's order dated October 14, 2014 [Dkt. # 236], Creditor Martha Maggiore (f/k/a Martha Meier) ("Martha"), by and through her undersigned counsel, submit the following proposed findings of fact and conclusions of law relating to Creditor Edward Shrock's objection to Martha's claim.

### I.    JURISDICTION

1.    The Court has jurisdiction to resolve objections to claims asserted pursuant to 28 U.S.C. §§ 1334(a) and 157(a). Resolution of objections to proofs of claim filed in this case are core matters. 28 U.S.C. 157(a)(b)(2)(B). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### II.    FINDINGS OF FACT

**A.    DEBTOR'S OBLIGATIONS TO MARTHA UNDER THEIR MARITAL SETTLEMENT AGREEMENT.**

2.    Martha is the former spouse of the Debtor Robert Meier ("Robert" or "Debtor"). (Ex. 1.)[1]

3.    Martha and Debtor were lawfully married on July 29, 1978. (*Id.* ¶ A.)

---

[1] "Ex. __" refers to the corresponding trial exhibit of Martha Meier, which the Court admitted into evidence at the October 14, 2014 hearing. Having previously submitted such exhibits to the Court as part of its trial binder, Martha does not reattach such exhibits here. As a convenience to the Court and the parties, Martha will make additional copies of such exhibits available to any interested party on request.

4. Debtor and Martha ceased living together on or about January 2003. (*Id.* ¶ B.) On September 2, 2005, Debtor filed a Petition for Dissolution of marriage in the Circuit Court of Cook County, Illinois (the "Divorce Court") where it was assigned case number 05-D-8163. (*Id.* ¶ D.) Martha filed her counter-petition for divorce on December 18, 2008.

5. On January 15, 2010, the Divorce Court entered a Judgment for Dissolution of Marriage (the "Divorce Judgment") dissolving their marriage. Claimant's Exhibit 1 is a true and correct copy of the Divorce Judgment.[2]

6. At the time of their divorce, Martha earned substantially less than Debtor. Martha and the Debtor substantially relied on the Debtor's income for their support.

### 1. Under the terms of their divorce, Debtor agreed to pay Martha a fixed amount of maintenance totaling $4 million.

7. Under the terms of the Divorce Judgment, the Divorce Court approved and made effective that certain Marital Settlement Agreement dated January 15, 2010 (the "MSA"). Claimant's Exhibit 2 is a true and correct copy of the MSA.

8. Martha and Robert entered into the MSA after arms-length negotiations.

9. Pursuant to Article II of the MSA titled "MAINTENANCE," Debtor agreed to pay Martha a fixed amount of maintenance in the amount of $4 million to be paid in 120 equal monthly installments of $33,333.34, commencing on February 1, 2010 (the "Maintenance Payments"). (*See* Ex. 2, Art. II § 2.1 A (at p.3-4).)

10. To secure such payments, Debtor agreed to maintain a decreasing term life insurance policy naming Martha as the beneficiary in an amount sufficient to pay the unpaid balance of the Maintenance Payments. (*See* Ex. 2, Art. II § 2.1 A(iii) (at p.7).)

---

[2] References to "Exhibits" correspond to the exhibits designated by Martha in her Exhibit List filed concurrently with these proposed findings of fact, copies of which will be submitted to the Court in a tabbed binder as required under the Court's Final Pretrial Order.

2

11. Debtor agreed to make the Maintenance Payments on the 1st of each month and had until the 14th of each month before such payments were deemed delinquent. (Ex. 2, Art. II § 2.1 A(i) (at p.5).)

12. Martha and Debtor agreed that such Maintenance Payments were "non-reviewable and non-modifiable maintenance to Martha." (*See id.*)

13. Under the terms of the MSA, the parties considered the entire $4 million "due and owing" at the time they entered into the MSA. For example, the parties agreed that under certain circumstances the entire unpaid balance then "due and owing" would accelerate and become immediately payable. (*See* Ex. 2, Art. II §2.1 A(i) (at p.6).) Specifically, the parties agreed that if Debtor is delinquent three or more times within any two year period and Martha files three petitions with the court, within that time, to enforce Debtor's obligations, "the total then remaining balance *due and owing* on the 120 month obligation to Martha" would accelerate and become "due and payable" in full immediately to Martha. (*Id*. (emphasis added).)

14. Further, under the terms of the MSA, Debtor agreed to pay Martha the entire remaining balance due on his maintenance obligation to Martha should he sell, transfer or dispose of his interest in his business, Baby Supermall, LLC for more than two times the outstanding balance due on his maintenance obligation to Martha at the time of the sale or transfer. (Ex. 2, Art. II § 2.1 A(ii) (at p.6-7).) Such payment would be in the form of a loan to Martha in the full amount of the unpaid balance owed on the maintenance obligation. (*Id.*) Under the terms of the MSA, Martha would have no obligation to repay such loan. (*Id.*)

15. In exchange for these agreements (and the other consideration set forth in the MSA), Martha agreed to waive any other claim against Debtor for past, present or future support. (Ex. 2, Art. II § 2.1 (at 3-4).)

3

16. As of March 20, 2014 (the "Petition Date"), Debtor had made 50 of the monthly installment payments (February 2010 – March 2014) to Martha totaling $1,666,667 of his $4 million maintenance obligation. Accordingly, as of the Petition Date, Debtor owed an outstanding balance of $2,333,333.00 to Martha on account of the unreviewable and unmodifiable Maintenance Payments provided for under the MSA, which the Debtor was to continue pay off through the scheduled installment payments.

17. Since the Petition Date, Debtor has failed to make any further Maintenance Payments to Martha. Thus, Debtor is delinquent on his payments due for April 2014 through September 2014 totaling $233,333.38. If no payment is received by November 14, 2014, Debtor will become delinquent on an additional $33,333.34.

**2.  Debtor also owes Martha $400,000 under the MSA as part of their division of property.**

18. Under Article III of the MSA, entitled "DIVISION OF PROPERTY," Debtor agreed to transfer to Martha various items of personal property consisting of the marital home and its furnishings, the automobiles then in the possession of Martha, certain membership reward points; all financial accounts in the wife's name; and a certain life insurance policy. (*See* Ex. 2, Art. III § 3.1(A) – (I) (at p.8-12).)

19. Likewise, under the MSA, Debtor retained certain property including his 87.5% interest in the business entity known as Baby Supermall, LLC; certain personal property and automobiles in his possession; real property located in Arlington Heights, Illinois; various financial accounts in his name; and membership points. (Ex. 2, Art. III § 3.2(A)-(G) (at p.12-13).)

20. As part of their division of property, Debtor agreed to pay the sum of $400,000 to Martha on or before February 1, 2021. (Ex. 2 § 3.1(D) (at p.10).) To date, Debtor has not made such payment to Martha and such amount remains due and owing.

B. **DEBTOR'S BANKRUPTCY CASE**

21. On March 20, 2014 (the "Petition Date"), Debtor filed his voluntary bankruptcy petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtor remains in control of his affairs as debtor and debtor in possession.

22. On April 22, 2014, the Court set June 30, 2014, as the claims bar date and required objections to any such claims be filed no later than July 14, 2014. (Order [Dkt. 31].)

23. Martha timely filed her proof of claim on June 30, 2014 (the "Original Proof of Claim), asserting a claim for $2,733,333.80. Exhibit 3 is a true and correct copy of Martha's Original Proof of Claim.

24. In part 5 of the proof of claim form, Martha's counsel checked the box indicating that Martha asserted her claim was entitled to priority as a "Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)." (Ex. 3 at 1.) Martha made no factual assertions in her Original Proof of Claim regarding the specific terms of the MSA or the factual basis of her priority claim.

25. On July 14, 2014, creditor Edward Shrock ("Shrock") filed objections to every claim filed in this case, including to Martha's Original Proof of Claim. (*See* Ex. A Creditor Edward Shrock's Amended Objection to Martha Meier Claim Pursuant to Bankruptcy Rule 3007 [Dkt. #96].)

26. In his Objections, Shrock failed to raise any of the arguments on which he presently objects to Martha's claim, including his current assertion that the $400,000 property

5

settlement should be denied as an unmatured domestic support obligation.  (*Compare* Shrock Am. Obj. [Dkt. #96] to Shrock Proposed Findings [Dkt. #265].)

27. To the contrary, Shrock asserted the opposite in his original objection.  He then claimed that "the division of property between Martha and Meier was ***not*** a domestic support obligation because the intent was to obtain a division of marital assets (ie. [sic] property settlement), not support (ie. [*sic*] alimony or maintenance)."  (Shrock Am. Objection [Dkt. #96] (citations omitted; emphasis added).)

28. On September 12, 2014, Martha amended her claim to attach the Divorce Judgment and MSA (the "Amended Claim").  Exhibit 4 is a true and correct copy of Martha's Amended Claim.

29. As part of her Amended Claim, Martha attached a "Supplement to Martha Meier Proof of Claim" that acknowledged the $400,000 property settlement portion of her claim was, as Shrock asserted, not a support obligation but was a division of marital assets.  (Ex. 4 at 4 ¶ 5.)

30. Accordingly, Martha (through her counsel) also changed the amount listed in part 5 of the proof of claim form to reduce the amount she claimed was subject to priority from $2,733,333.00 to $2,333,333.00.  (Ex. 4 at 1.)

31. On September 18, 2014, the day before the hearing on his objection, Shrock filed a "reply" in which he failed to address any of the arguments raised in his initial objection, but instead raised new objections to Martha's claim not originally set forth in his original objection.  (*Compare* Am. Obj. [Dkt. #96] to Reply [Dkt. # 182].)

32. In his "reply," after Martha conceded in her Amended Proof of Claim that the $400,000 was properly classified as a division of property and thus not entitled to priority as a domestic support obligation (as Shrock had originally argued), Shrock changed his position and

6

asserted for the first time that Martha was now barred from denying that the $400,000 was a domestic support obligation.  (*Compare* Shrock Am. Obj. [Dkt. #96] ¶18 to Shrock Reply [Dkt. #182] ¶ 3.)

33.  On September 19, 2014, the Court entered a final pretrial order in which the Court directed the parties to submit their proposed findings of fact and conclusions of law by October 7, 2014, and set a trial on Shrock's objection for October 14, 2014.  (Order [Dkt. #202].)

34.  Both the parties' filed their proposed findings of fact and conclusions of law on October 7, 2014.  On the October 10, 2014 — the Friday before a holiday weekend with trial set for Tuesday, October 14 — Shrock filed a "supplemental" proposed findings and conclusions of law in which he revises his argument yet again to cite to Section 502(b)(5) of the Bankruptcy Code.  (*See* Supplemental Filing [Dkt. #226].)

35.  On Sunday, October 12, 2014, Shrock continued to revise his claim objection (set for trial the next business day) by filing yet another amended objection to Martha's claim asserting the new arguments he raised in his supplemental filing and citing new case law. (Shrock 2d Am. Obj. ¶ 8 [Dkt. #227].)

## II.    CONCLUSIONS OF LAW

**A.    SHROCK BEARS THE BURDEN OF PRESENTING EVIDENCE SUFFICIENT TO OVERCOME THE *PRIMA FACIE* VALIDITY OF MARTHA'S CLAIM.**

36.  Pursuant to Section 502(a) of the Bankruptcy Code, a claim, proof of which is filed under Section 501, is deemed allowed unless a party in interest objects.  11 U.S.C. 502(a); *In re Guidry*, 321 B.R. 712, 714 (Bankr. N.D. Ill. 2005).   A proof of claimed filed under Section 501 is *prima facia* evidence of that claim or interest.  *See In re Orseno*, 390 B.R. 350, 353-54 (Bankr. N.D. Ill. 2008); 11 U.S.C. 502(a); Fed. R. Bankr. P. 3001(f).

7

37. An objecting party bears the burden of presenting evidence sufficient to overcome the prima facie validity of the claim. *In re Orseno*, 390 B.R. 350, 353-54 (Bankr. N.D. Ill. 2008) ("A party objecting to the proof of claim . . . has the initial burden to produce some evidence on legal point to overcome this rebuttable presumption.") (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992); *In re Missionary Baptist Found. of America*, 818 F.2d 1135, 1143 (5th Cir.1987).)

38. The holder of the claim bears the risk of non-persuasion and the ultimate burden of proof respecting allowance of the claim. *In re Orseno*, 390 B.R. 350, 353-54 (Bankr. N.D. Ill. 2008) (citation omitted).

39. If a party objects to a claim, the Court should allow the claims, except to the extent it meets one of the criteria set forth in Section 502. *In re Guidry*, 321 B.R. 712, 714 (Bankr. N.D. Ill. 2005) ("And under § 502(b), if a party objects, the court, after notice and a hearing, must allow the claim except to the extent that it is subject to one or more of nine grounds for disallowance enumerated in § 502(b).") Thus, Section 502 of the Bankruptcy Code provides the sole grounds on which the Court may disallow a claim objected to by a creditor. *Id.*

**B.    Because Martha's Claim for $2.3 Million in Maintenance Payments is a Matured Domestic Support Obligation, It Should Be Allowed With Priority Status.**

40. Claims for domestic support obligations may only be disallowed to the extent that such claims are "unmatured" as of the Petition Date. *See* 11 U.S.C. § 502(b)(5). Section 502(b)(5) provides that a claim shall be allowed except to the extent that "such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title." 11 U.S.C. § 502(b)(5).

41. Section 523(a)(5) provides that a discharge under sections 727 or 1141 (among others) does not discharge an individual debtor from any debt "for a domestic support obligation." 11 U.S.C. § 523(a)(5).

42. Thus, for a claim to be disallowed under Section 502(b)(5), such claim must be for a debt that is (i) unmatured *and* (ii) excepted from discharge because it is a domestic support obligation.

43. Shrock does not dispute that Martha's Claim for $2,333,333 of Maintenance Payments due under the MSA is a domestic support obligation. (*See* Shrock's Final Proposed Findings of Fact [Dkt. #265].)[3]

44. The Bankruptcy Code fails to define what constitutes an "unmatured claim." In the absence of such definition, Courts have looked to the ordinary and usual meaning of the term. One such court observed that "matured claim" is commonly understood to refer to a debt that is unconditionally due and owing." *See In re Lawrence*, 237 B.R. 61, 86 (Bankr. D.N.J. 1999) (citing Black's Law Dictionary).

45. Under the terms of the MSA, Debtor unconditionally became indebted to Martha for $4 million in maintenance that was unreviewable and unmodifiable. (Ex. 2, Art. II § 2.1(A).) In the MSA, the parties themselves referred to the remaining unpaid balance owed for

---

[3] In a footnote, Shrock purports to reserve the right to contest whether Martha's claim is for support or constitutes a division of property. (*See* Shrock Final Proposed Findings [Dkt. #265] n.1.) As Shrock has failed to make such argument much less develop such argument notwithstanding having insisted on moving forward with an evidentiary hearing on his claim, Shrock has waived any such argument. "Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *In re Golfview Developmental Ctr., Inc.*, 309 B.R. 758, 771 (Bankr. N.D. Ill. 2004) (citing *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 200) (collecting cases). "The Court does not have a duty to research and construct legal arguments available to a party. *Golfview*, 309 B.R. at 771 (citing *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir.1995). Failure to cite any supporting case citation or authority results in failure of the point. *See id.* (citations omitted).

9

maintenance as "due and owing," which could be accelerated under certain circumstances to also become payable. (*See, e.g.,* Ex. 2, Art. II §2.1 A(i) (at p.6).)

46. Further, Debtor's obligation to pay Martha the fixed amount of $4 million vested at the time the Divorce Court approved the MSA as such amount was then fixed and could neither be reviewed nor modified, unlike some forms of post-petition alimony that remain indefinite and subject to review and modification. Indeed, reflecting that such amount was vested, Debtor was also obligated under the MSA to maintain a life insurance policy of sufficient amount to ensure full payment to Martha in the event of his death. (*See* Ex. 2, Art. II § 2.1 A(iii) (at p.7).) Thus, ever since the MSA became effective, Debtor's outstanding maintenance obligations to Martha was fully matured and therefore not subject to disallowance under Section 502(b)(5). As of the Petition Date, Debtor undisputedly owed $2,333,333.00 on account of such debt.

47. In contending that Martha's claim should be denied as a "postpetition domestic support obligation," Shrock misplaces reliance on chapter 13 case law that addresses support obligations that – unlike Martha's claim here – have not vested as of the petition date and are subject to future modification and review. In *McKinney*, the court unremarkably found that "$2,500 per month in *modifiable* alimony" due post-petition was unmatured. *In re McKinney*, 507 B.R. 534, 538 & n.7 (Bank. W.D. Pa. 2014). In *In re Werth*, the Court rejected the Debtor's arguments that his obligation to pay one-half of his son's post-secondary education expenses was a matured support obligation where his son had not yet graduated high school and such costs were thus indeterminate. *In re Werth*, 468 B.R. 412, 413 (Bankr. D. Kan. 2012); s*ee also In re Young*, 497 B.R. 904, 916 (Bankr. W.D. Ark.) (observing that post-petition support obligations are commonly (though not here) subject to state court's retained jurisdiction to modify alimony

10

on an ongoing basis).   Here, to the contrary, Debtor's obligation to Martha is fully matured having been fixed, vested, and made unreviewable or unmodifiable.

48.     Accordingly, Martha's matured claim for $2,333,333 in maintenance payments due under the MSA is therefore allowed with priority as a domestic support obligation under Section 507(a)(1).

C.     **Martha's Claim for $400,000 Due Under the MSA on Account of the Parties' Division of Property is Not a Domestic Support Obligation.**

49.     Whether a debt is a "domestic support obligation" under the Bankruptcy Code is a legal question to be determined under federal law.  *In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998).

50.     Section 101(14A) of the Bankruptcy Code defines "domestic support obligation" to include a debt owed to a former spouse "in the nature of alimony, maintenance, or support . . . of such former spouse . . . without regard to whether such debt is expressly so designated" established by "a separation agreement, divorce decree, or property settlement agreement" or order of a court of record.  11 U.S.C. § 101(14(A).

51.     Here, there is no dispute that Martha's claim for $400,000 due under Section 3.1(D) of the MSA is for a debt owed to a former spouse and arises from "a separation agreement, divorce decree, or property settlement agreement" as required by Section 101(14(A)). Thus, whether Martha's claim for the $400,000 is classified as a domestic support obligation turns on whether the parties intended such debt to be in the nature of support.  *In re Reines*, 142 F.3d 970, 973 (7th Cir. 1998).

52.     Here, the parties expressly provided for the $400,000 payment in the section of the MSA called "DIVISION OF PROPERTY" rather than the "MAINTENANCE" section. (*Contrast* Ex. 2, Art. III § 3.1(A) – (I) (at p.8-12) *with* Ex. 2, Art. II (at p.3.)   The Parties also

11

expressly stated that such payment was "as and for and in conjunction with the additional property division." (Ex. 2, Art. III § 3.1 (D) (at p.10).) Moreover, the fact that Debtor was not required to make such payment until February 1, 2021 (more than a decade after the divorce became final), further confirms that the parties could not have intended such single future payment to be in the nature of support and thus the $400,000 payment fails to meet the Bankruptcy Code's definition of a domestic support obligation. 11 U.S.C. § 101(14(A)).

53. Other than his judicial admission argument, Shrock fails to offer any evidence whatsoever that the parties to the MSA intended the $400,000 is anything but a property division. In fact, in his original objection, Shrock argued that it should in fact be treated as a division of marital property. (*See* Shrock Am. Obj. [Dkt. #96] ¶ 18 ("Also, the division of property between Martha and Meier was not a domestic support obligation because the intent was to obtain a division of marital assets (ie. property settlement), not support (ie. alimony or maintenance).")

54. "A judicial admission arises by way of *factual* assertions in pleadings, stipulations, statements in pretrial orders, and by responses to requests to admit." *Oak Mill Enterprises 200, Inc. v. Knopfler*, 141 B.R. 1000, 1006 (Bankr. N.D.IL 1992) (J. J. Schmetterer) (emphasis added) (*citing* American *Title Insurance Company v. Lacelaw Corporation*, 861 F.2d 224, 226 (9th Cir.1988); *In re Prairie Trunk Railway*, 1991 WL 149601, (Bankr.N.D.Ill. July 23, 1991).)

55. In her Original Claim, Martha never made any factual assertions regarding the $400,000 payment due under Section 3.1(D) of the MSA. Rather, Martha (or rather her counsel) merely checked the box in Section 5 of the proof of claim form asserting that her claim was entitled to priority "as a domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or

(a)(1)(B)" — a legal, not factual, assertion. Indeed, based solely on the box checked in her original claim, it is unclear whether Martha was asserting priority under Section 507(a)(1)(A) or (a)(1)(B). She made no factual assertions regarding the basis of such claim nor any factual statements regarding whether such debt was intended by the parties for her support. Accordingly, Martha's original proof of claim provides no relevant evidence, much less any judicial admission, regarding whether her claim for $400,000 under the MSA should be classified as a domestic support obligation.

56.     In any event, even if the Court were to *infer* some admission of fact from Martha's original proof of claim, "it is within the court's discretion whether to accept or reject it. *Oak Mill Enterprises 200, Inc. v. Knopfler*, 141 B.R. 1000, 1006 (Bankr. N.D.IL 1992) (J. J. Schmetterer) (citing *In re Applin*, 108 B.R. 253, 258 (Bankr.E.D.Cal.1989).) "When a party making a judicial admission subsequently provides a timely explanation as to the error, the trial court must accord the explanation due weight." *Kasbee v. Huntington Nat'l Bank (In re Kasbee)*, 466 B.R. 719, 723 (W.D. Pa. 2010) (citations omitted).

57.     Here, Martha amended her claim immediately following Shrock's objection that the division of property between Debtor and Martha was not entitled to priority and should be treated as a division of marital assets rather than as a domestic support obligation. *See Kasbee*, 466 B.R. at 723 ("'[A]dmissions' made in superceded pleadings lose their binding force. . . .").) Martha timely amended her claim to concede to Shrock's objection citing the evidence on which she based her revised her claim. Specifically, in her amended proof of claim, Martha cited the relevant provisions of the MSA that expressly denoted the $400,000 payment to be due on account of the parties' division of marital property. (*See* Ex. 4 at pg. 4 ¶ 5.) During the hearing on September 19, 2014, Martha's counsel explained to the Court the basis for Martha's claim,

13

including highlighting the relevant provisions in the MSA.  Again, in her original proposed findings of fact submitted on October 7, 2014, Martha again outlined the basis for her revision. (*See* Martha's Proposed Findings [Dkt. # 222] ¶55.)

58. Having successfully induced Martha to reconsider her original position and amend her claim in light of his objection, Shrock should not be permitted to reverse course and claim that her first assertion (but not his) should be binding.  Having failed to offer any other evidence to suggest that the $400,000 claim was intended for support, Shrock is engaging in gamesmanship by inviting the Court to make findings that are plainly contrary to the overwhelming weight of the evidence.

59. Because the $400,000 payment under the MSA is one owed on account of a division of marital property and no provision of Section 502(b) provides for the disallowance of debts arising from a marital settlement agreement for the division of property, Martha's claim for the $400,000 is also allowed.

D. **MARTHA'S CLAIM IS PRESUMED VALID.**

60. For completeness, Martha briefly addresses objections raised by Shrock in his original objection even as it appears Shrock has abandon those objections.

61. While Bankruptcy Rule 3001(c) directs that where a claim is based on a writing, creditors are to attach the writing to the proof of claim, nothing in Rule 3001(c) authorizes a Court to deny the claim in the absence of such documents.  *See Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993) (holding that nothing Rule 3001(c) bars a creditor from establishing a claim notwithstanding failure to attach a required writing);  *In re Guidry*, 321 B.R. 712, 714 (Bankr. N.D. Ill. 2005) (rejecting claim objection based on a failure to attach documents otherwise required by Fed. R. Bankr. P. 3001(c).)

62. Rule 3001 cannot serve as a basis for disallowing a claim because the legislation allowing the Supreme Court to prescribe bankruptcy rules bars such rules from abridging or modifying any substantive right. *Guidry*, 321 B.R. at 714 (citing 28 U.S.C. § 2075). "Thus, a bankruptcy rule cannot create a ground for disallowance of claims not set out in the Code." *Id.*

63. Recognizing that the severe sanction of denial of claim should be avoided for harmless error, the Seventh Circuit directs that "[a] creditor should be allowed to amend an incomplete proof of claim . . . to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing." *Stoecker*, 5 F.3d at 1028.

64. Because Martha appropriately amended her proof of claim attaching the MSA to her proof of claim, Martha's Amended Claim serves as *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *Stoecker*, 5 F.3d at 1028.

65. Accordingly, Shrock's demand that Martha's claim be denied for failure to attach documents (*see* Am. Obj. [Dkt. # 96] ¶¶ 3-8) is overruled and Martha's Proof of Claim is presumed valid.

E. **SHROCK'S REQUEST TO EQUITABLY SUBORDINATE MARTHA'S CLAIM THROUGH HIS CLAIM OBJECTION IS IMPROPER UNDER BANKRUPTCY RULE 3007(B).**

66. Equitable subordination is relief that must be brought through an adversary proceeding with its attendant procedural protections as provided under Bankruptcy Rule 7001. Fed. Bankr. R. 7001(8).

67. Bankruptcy Rule 3001(b) expressly bars parties in interest from attempting to bring claims for relief that are of a kind provided for under Bankruptcy Rule 7001. Fed. Bankr. R. 3001(b) ("A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.); *see also In re J.S. II, L.L.C.*, 389 B.R. 570, 586 (Bankr. N.D. Ill. 2008) (holding

15

"equitable subordination must proceed via an adversary proceeding, as required under Fed.R.Bankr.P. 3007(b) and 7001(8)"). Bankruptcy Rule 7001(8) expressly provides that claims for equitable subornation must be brought as an adversary proceeding.

68. Accordingly, Shrock's request for equitable subornation (*see* Am. Obj. [Dkt. #96] ¶ 9) is improperly raised in his Objection and is denied.

Dated: November 12, 2014            Respectfully submitted,

**MARTHA MEIER**

By: /s/    Blair R. Zanzig
       (One of Her Attorneys)

Blair R. Zanzig (No. 6273293)
John Hiltz (No. 6289744)
**HILTZ & ZANZIG LLC**
53 West Jackson Blvd., Suite 205
Chicago, Illinois 60604
Telephone: 312.566.9008
Fax:  312.566.9015

*Counsel for Creditor Martha Meier*

## CERTIFICATE OF SERVICE

      I, Blair R. Zanzig, an attorney, hereby certify that, on the 12th day of November 2014, I caused a true and correct copy of the foregoing **Creditor Martha Meier's Final Proposed Findings of Fact and Conclusions of Law** to be served via the Court's electronic case filing system on the following:

Paul M Bauch on behalf of Debtor Robert J. Meier
pbauch@bauch-michaels.com, smohan@bauch-michaels.com

John F Hiltz on behalf of Creditor Martha Meier
jhiltz@hwzlaw.com, kwantuch@hwzlaw.com,bzanzig@hwzlaw.com

Steve Jakubowski on behalf of Creditor Edward Shrock
sjakubowski@rsplaw.com, docketing@rsplaw.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Kenneth A. Michaels, Jr on behalf of Debtor Robert J. Meier
kmichaels@bauch-michaels.com, pbauch@bauch-michaels.com

Patrick F Ross on behalf of Creditor Ungaretti & Harris LLP
pfross@uhlaw.com,
kburde@uhlaw.com;rjanczak@uhlaw.com;sbmiller@uhlaw.com;jtruskusky@uhlaw.com

Carolina Y Sales on behalf of Debtor Robert J. Meier
csales@bauch-michaels.com

Kathleen A Stetsko on behalf of Creditor Baby Supermall
kstetsko@perkinscoie.com, docketchi@perkinscoie.com

John Xydakis on behalf of Creditor Edward Shrock
johnxlaw@gmail.com

Daniel A Zazove on behalf of Creditor Baby Supermall
docketchi@perkinscoie.com

                                                                                     /s/ Blair R. Zanzig