United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>Robert J. Meier,<br>    Debtor. | Bankruptcy No. 14-bk-10105<br>Chapter 7 |

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND OBJECTION THERETO

Before the court for ruling is the motion of chapter 7 trustee Robert B. Katz ("Trustee") the settlement of all claims between the estate on the one hand, and Baby SuperMall LLC ("BSM") and Edward R. Shrock ("Shrock") on the other. Creditor Ungaretti & Harris LLP ("U&H") filed an Objection to the Trustee's motion. The parties have fully briefed the matter and the court heard final arguments on October 16, 2015.

For reasons stated below, the Trustee's motion will be granted and U&H's objection will be overruled by separate order.

## BACKGROUND

The Trustee seeks to settle all claims between the estate and two parties holding claims against the estate, Shrock and BSM. In addition to the release of all claims among the parties, the Trustee agrees to transfer the estate's membership interest in BSM to Shrock. Shrock, in turn, agrees to pay the estate $300,000.

U&H's Objection argues that the $300,000 net payment to the estate by Shrock grossly undervalues the Trustee's interest in BSM. In support, U&H pointed to (1) an offer by an individual, David Suby ("Suby"), to buy the entire company for $1 million (the "Suby

Offer"); and (2) documents purporting to show that BSM, and the Trustee's interest, is worth upwards of $2,000,000.

The Trustee and BSM filed responses to the Objection wherein they noted that the Suby Offer had expired and failed to assume certain liabilities; they note that the Suby Offer was not actually a competing offer, in part, because it ignored the costs that would have to be incurred to dissolve the company and then sell the entire company.

With respect to BSM's value, BSM offered to introduce testimony and other evidence to show current value of the company; it argued that U&H's numbers do not reflect current financial condition of company.

On October 13, 2015, the court scheduled a hearing on October 16, 2015 to hear arguments from the parties on whether an evidentiary hearing on BSM's value was needed (a potential evidentiary hearing date was set for October 29, 2015), and for David Suby to appear and either:

    a. Present a concrete offer to advance litigation funds for the Trustee to seek dissolution of BSM in state court (and subsequently buy the whole company);

    b. Make an offer to buy the interest that the Trustee currently holds and proposes to dispose of as part of the proposed settlement; or

    c. Bring any other competing offer for the parties and the court to consider, or else court would assume no such competing offer to buy BSM exists.

Suby did none of those things. With respect to the question of whether an evidentiary hearing was needed for purposes of the Trustee's motion, the Trustee argued that the evidentiary hearing was not necessary for the court to rule on his motion. BSM proposed to introduce testimony of the CEO of the company as evidence that BSM is worth less than U&H's Objection to the Trustee's Motion presumes, but did not otherwise take the

position that an evidentiary hearing was necessary for purposes of approving the proposed settlement. After hearing the parties' arguments, the court concluded that an evidentiary hearing would not be necessary to rule on the Trustee's motion.

## DISCUSSION

A. Applicable Standards

Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000).

The main question in approving a bankruptcy settlement is "whether the settlement is in the best interests of the estate." *In re Andreuccetti*, 975 F.2d 413, 421 (7th Cir. 1992); *Matter of Energy Co-op., Inc.*, 886 F.2d 921, 927-29 (7th Cir. 1989).

To answer this question, the court must first compare the settlement terms with the probable costs and benefits of continued litigation. *In re Commercial Loan Corp.*, 316 B.R. 690, 697 (Bankr. N.D. Ill. 2004); *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 161 (7th Cir. 1987).

The court must then "determine whether the value of the proposed compromise distribution is reasonably equivalent to the value of the potential claim which has been surrendered or modified by the settlement which has been achieved." *Matter of Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) (quotation marks omitted). "The test for reasonable equivalence is 'whether or not the terms of the proposed compromise fall within the reasonable range of litigation possibilities.'" *Id.*

3

A challenged settlement fails this test only if it "fall[s] below the lowest point in the range of reasonableness." *Id.*; *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994).

Relevant factors a bankruptcy court should consider in evaluating a proposed settlement include: "(1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense and inconvenience in delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Patel*, 43 B.R. 500, 504 (N.D. Ill. 1984); *In re Am. Reserve Corp.*, 841 F.2d 159, 161-62 (7th Cir. 1987).

The decision to approve a settlement is within a Bankruptcy Court's discretion. *See Depoister*, 36 F.3d at 586-87 (applying the abuse of discretion standard to affirm the bankruptcy court's approval of a settlement).

B. <u>The Trustee's Proposed Settlement is in the Best Interest of the Estate</u>

The proposed settlement will be approved notwithstanding U&H's contention that the Trustee undervalues BSM. While evidence of the current value of BSM could address U&H's remaining objections to approval of the settlement, this evidence is not necessary for the court to rule on the Trustee's motion. The value of the company as a whole is not relevant because the Trustee does not own a marketable interest in BSM; the Trustee's analysis concerns the value of the membership interest subject to the limitations imposed by BSM's operating agreement.

The Objection argues that the Trustee could potentially transform his interest into a more valuable asset by dissolving the entity in state court. Even if the court assumes that

4

BSM is as valuable as U&H suggests, the asserted value is contingent on dissolution proceedings. There are legal complications to dissolving an LLC entity which would pose uncertainty to any effort by Trustee to do so. *See generally* Richard J. Mason and Patricia K. Smoots, *Can an Estate Effectively Liquidate a Fractional Interest in an LLC?*, ABI Journal, October 2015.

While an assessment of value of the entire company could be considered relevant to assess the potential benefits and risks of litigation, this would only matter if the parties' valuation varies significantly so as to influence the benefit-risk assessment. In this case, the benefit to the estate would not be substantial when risk is taken into account.

Moreover, in approving a settlement, the bankruptcy court shall also consider a trustee's business judgment that the proposed settlement is in the best interest of the bankruptcy estate. *See Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 587 (7th Cir. 1994); *In re Hessinger Resources Ltd.*, 67 B.R. 378, 383 (C.D. Ill. 1986).

The Trustee's judgment is very clear:

> The Court: All right. You have told me – you have seemed to indicate very clearly that you're not interested in pursuing a dissolution in the state court.
>
> Mr. Brown: Your Honor, I don't think that it would be a wise business decision for the trustee.
>
> The Court: Because?
>
> Mr. Brown: It would involve litigation, it would involve delay, and it would involve the risk that the whole business craters during that period and that there's nothing left.
>
> The Court: Why do you say that's a risk?
>
> Mr. Brown: Because of the loan agreement.

> The Court: Why does the loan agreement risk the business cratering?
>
> Mr. Brown: Because the loan agreement, the dissolution proceeding would be a default under the loan agreement, and if they pull the loan, then the business might very well lack operating cash to continue.
>
> The Court: You mean your success, if you pursue dissolution, might have a terrible consequence?
>
> Mr. Brown: Yes, exactly, Your Honor. It's not at all clear that at the end of this road is a going concern sale. What ends up may very well be a liquidation sale of inventory at 25 cents on the dollar or whatever, and we'd have to pay all the creditors of the business before we get to the partners' distributional interest. That might include rent, including future obligations for rent.
>
> The Court: And the trustee has only a partnership distributional interest?
> Mr. Brown: That is correct, Your Honor. So in the trustee's view, 300 now is better than a hope and a prayer down the road.

It is reasonable for the Trustee to prefer settlement than prolonged litigation, given the history of this case.

Under the proposed settlement, the Trustee would obtain a release with respect to all claims that Shrock and/or BSM have against the estate, and a $300,000 payment from Shrock to the estate.

In exchange, the Trustee would release any and all claims the estate may have against Shrock and/or BSM, and agree to transfer its 87.5% membership interest in BSM to Shrock, who owns the remaining minority interest.

The Trustee believes this agreement is in the best interest of the estate, in part, because the 87.5% membership interest it currently holds is not a marketable interest (because Trustee can only transfer a nonvoting interest in profits).

Under the operating agreement, sale of the members' interest requires assumption and assignment, which the Trustee cannot freely do without Shrock's approval and consent.

6

Shrock has been unwilling to sell his membership interest for years and does not propose to do so now.

The only other option available to the Trustee to dispose of its interest in BSM would be to dissolve the company, a strategy that would likely result in litigation. Given the history in this case, the current settlement terms are in the best interest of the estate; the estate would receive cash and settle two large claims, avoiding incurring additional administrative costs.

The Trustee's business judgment is sound, and the settlement will therefore be approved over objection.

## CONCLUSION

For the foregoing reasons, the Trustee's motion will be granted and objections thereto overruled by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 29th day of October, 2015.

OCT 29 2015